## W. D. NEWSOM v. THE STATE.

No. 14396. Delivered May 6, 1931.
Rehearing Denied June 10, 1931.

The opinion states the case.

*Duncan & Davis,* of Gonzales, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, four years in the penitentiary.

The record is here without any bills of exception. The statement of facts is very short, and reveals beyond controversy that appellant cut and stabbed deceased with a knife apparently without any claim of self-defense, from which cutting deceased died very shortly. The only claim presented in appellant's brief is that the testimony fails to show a previous intent to kill. We find nothing in the authorities cited by appellant supporting the proposition that from facts like these a jury would not be justified in concluding that the killing was a voluntary killing. Under the terms of our present murder statute one who voluntarily kills another without malice is punishable by confinement in the penitentiary for some period of years not less than two. We regret our inability to agree with the position taken by appellant's counsel.

No error appearing, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Appellant, through his counsel, challenges the sufficiency of the evidence to support the verdict.

The following is a synopsis of the evidence: Newsom, the appelant, James, the deceased, and three other persons, came in an automobile to a place called Hamon's Store, at which there was a filling station. James brought a tire to one of the attendants and sought to have it repaired. It was not in a condition permitting repair, and after some conversation between Newsom and James, Newsom declared that if James "would stay with him," they would make the boy in the store repair the tire. James, it seems, demurred. One of the attendants in the store was named Olin Freeman. James said: "Olin Freeman is our friend; he hasn't done anything to us. He can't help how John Hamon runs his store." Newsom said to James: "You red-headed son-of-a-bitch, I am not talking to you." Newsome got up and commenced cutting at James with a

knife or something in his hand. He was attempting to cut or stab the deceased somewhere about his chest and then struck at James and cut him in the groin. James turned and ran. He had nothing in his hand at the time and made no attempt to strike Newsom. After James fell, Newsom ran out to him and tried to make him get up, and said: "Do you think you got enough, you son-of-a-bitch?" On redirect examination, the witness said that after James fell, Newsom went to him and tried to help him up.

A doctor described the wound upon the deceased, stating that it was inflicted by a sharp instrument which severed the femoral vessel, one of the main vessels of the human body; that death resulted from the wound; that a sharp instrument, when used in the hands of a man of the size of the appellant, with sufficient force to stab a person in the groin, would likely produce death or serious bodily injury. There were no other wounds upon the body of the deceased.

The knife used was not introduced in evidence. It was not described further than has been indicated here.

The appellant did not testify.

The court gave no instruction to the jury on the subject of a deadly weapon and was not requested to do so.

The jury was instructed upon the law of murder and aggravated assault.

There are no bills of exception complaining of the procedure on the trial.

In the case of Hudson v. State, 59 Texas Crim. Rep., 655, the term "deadly weapon" is thus defined:

"A weapon by which death may readily and easily be produced; anything, no matter what it is, whether it be made for the purpose of destroying animal life, or whether it is made by man at all, or whether it is made by him for some other purpose, if it is a weapon; if it is a thing by which a death can be easily and readily produced, the law recognizes it as a deadly weapon."

In the case mentioned, and many others, whether a pocket knife, used as a weapon, is a deadly weapon, is a question of fact to be determined from the manner of its use. In other words, it is not a deadly weapon per se. Henderson v. State, 55 Texas Crim. Rep., 170. But from the manner of its use, the jury are to judge whether, in the particular case, the knife used was a deadly weapon.

In Price's case, 87 Texas Crim. Rep., 163, 220 S. W., 89, it is said: "A weapon may become deadly when from the manner of its use it is calculated to inflict death or serious bodily injury, but it is unnecessary that an injury be inflicted which is likely to produce death or give rise to apprehension before the weapon be deadly."

The character of the wounds is relevant to prove the nature of the weapon used. See Branch's Ann. Tex. C. P., p. 934.

In the present instance, the character of the weapon used, in so far as it illustrated the intent of the accused, was left, without objection, to the decision of the jury. As stated above, the issue of intent to kill was submitted to the jury in the charge, and to them was committed the decision as to whether the offense, if any, was murder or aggravated assault. Nothing is found in the record which would justify this court in overturning the verdict.

The motion for rehearing is overruled.

*Overruled.*