WILLIE LEE GAGE V. STATE.

No. 26,598. November 18, 1953.
Appellant"s Motion for Rehearing Denied (Without Written Opinion) January 27, 1954.

*Clyde and Barnes,* by *Al Clyde,* and *Tommy Forbis,* Fort Worth, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for rape; the punishment, death.

The evidence shows that appellant and his companion encountered the prosecuting witness shortly after 9:30 P.M. as she alighted from a bus and was walking on a dark street toward her home, which was some two blocks away.

The prosecuting witness, a young married woman, was forced into the back seat of a car by these two Negro men, despite her struggle and her outcries, and was held face down on the floor of the car by appellant while the other man drove to an old house near a dump ground. Here her eyes were covered with tape and she was dragged to a nearby spot and there ravished, three times by appellant and twice by his companion.

She testified that she closed her eyes tightly when the tape was placed over them and was able to see her assailants because of a slight opening left when she opened her eyes. She identified them later in a police line up.

Following the various assaults, prosecutrix was placed in the car, again being forced to lie on the floor, and was driven for a distance, then led for some half a block from the car and released. She then removed the bandage from her eyes and made her way to a nearby cafe that she found open, arriving there about 1:15 A.M. She reported to the cafe operator and his wife that two colored men had picked her up and had kept her out until then, and that they assaulted her.

The wrist watch worn by the prosecuting witness and her purse and its contents were taken from her during this ordeal and her glasses were missing.

The watch was found in a car owned by appellant, as were

her broken glasses. The purse was found buried near the dump ground, appellant having taken the officers to the place where he said he had buried it, and dug it up. A powder puff and lipstick, identified as having been in the purse, were produced by appellant from the pocket of his jacket.

Some $42 in money which was in the purse was not recovered, nor was prosecutrix' wedding ring which was taken from her finger by appellant.

Bills of Exception Nos. 1, 2 and 3 complain of the admission of testimony of the prosecutrix and of the cafe operator as to the conversation and report made by the prosecutrix.

The prosecutrix is shown to have reported only that she had been kidnapped, picked up by two colored men or Negroes and taken out and attacked.

We hold that this testimony was admissible, both under the rule of res gestae and as outcry.

Except for darkened houses, the cafe was the first place she found where the presence of people might be expected. There were "some people" in a car parked in front of the cafe, and the cafe operator and his wife came to the door as she inquired of those in the parked car about a telephone.

These were the first people prosecutrix had seen, and it was proper that the state be permitted to show that she reported the assault at that time. See McIntosh v. State, 85 Tex. Cr. Rep. 417, 213 S.W. 659.

The testimony shows that the prosecutrix was crying all of the time she was at the cafe, and had the piece of adhesive tape with which she had been blindfolded in her hand.

The testimony as to her report at the cafe constituted a part of the transaction itself and the trial court did not err in admitting it as res gestae. See Hall v. State, 141 Tex. Cr. Rep. 607, 150 S.W. 2d 404; Skinner v. State, 144 Tex. Cr. R. 648, 165 S.W. 2d 198; France v. State, 148 Tex. Cr. Rep. 341, 187 S.W. 2d 80.

Bills of Exception 5, 6 and 7 relate to the court's charge.

Appellant requested a charge on rape by threats as follows:

"To constitute a 'threat' there must be an avowed present determination of such a nature as to unsettle the mind of a person on whom it is intended to operate, and to take away from his or her acts that free and voluntary action which constitutes consent. You are further charged that to constitute 'rape by means of threat' there must be such threats as might reasonably create a just fear of death or great bodily harm, in view of the relative conditions of the parties as to health, strength, and all other circumstances of the case."

The requested charge was refused, the trial court having included in his main charge the following:

"To constitute rape by means of threats the threats within the meaning of the statute must be such as might reasonably create a just fear of death or great bodily harm in view of the relative condition of the parties as to health, strength and all other circumstances of the case, and it must appear that the party charged unlawfully assaulted the alleged injured female and by means of threats as above defined violently ravished and had carnal knowledge of her without her consent and against her will."

In the light of this instruction on the subject, we find no error in the court's refusal of the requested charge.

Bill No. 6 complains of the refusal of a requested charge containing the following:

"But if you should find and believe from the evidence that the said defendant did not then and there by force, if any, threats, if any, or by a combination of force and threats, as those terms are herein defined, have carnal knowledge of the said Ruth Sanders, but the same was with the consent of the said Ruth Sanders, then you shall acquit the defendant."

The trial court in his charge required that the jury, in order to convict, find that appellant ravished the prosecuting witness and had carnal knowledge of her without her consent and against her will, and instructed the jury to acquit unless they so found beyond a reasonable doubt.

Appellant did not testify, and we find no evidence which would require the court to give a further and affirmative charge on the prosecutrix having consented to the intercourse.

Bills of Exception Nos. 7 and 8 complain of the charge on rape by threats, quoted above in connection with Bill No. 5, upon the ground that there was no evidence that the prosecutrix was forced to submit to the acts of intercourse with appellant because of any threats made to her.

Appellant requested a charge defining threats and on the subject of rape by threats, and will not be heard to complain that a charge on the subject was given. He might of course attack the charge given upon other grounds, such as that it is not a correct charge on the subject.

Furthermore, we find that while the prosecutrix was under restraint by appellant and his companion, appellant "said they ought to kill me" several times.

The trial court did not authorize a conviction upon proof of rape by means of threats, but defined rape by threats and rape by force, and authorized a conviction for rape by force or by a combination of force and threats. In this we find no error.

Bills of Exception Nos. 4 and 9 will be considered together, as we are requested to do by appellant's counsel.

A. C. Howerton, a member of the Fort Worth Police Department, testified that he had a conversation with appellant in the early morning hours at a time he (appellant) was a prisoner, and that as a result of that conversation he recovered the articles received in evidence as State's Exhibits 3 and 5, (State's Exhibit 3 was the powder puff and lipstick which appellant produced from his jacket pocket, and State's Exhibit 5 was a brown leather billfold or purse containing check book, bank deposit book, and personal papers, all belonging to the prosecutrix).

Howerton testified that appellant freely and voluntarily told him where these articles were and went with him and dug up State's Exhibit 5, and that previous to such conversation with appellant neither Howerton nor the other officers knew or had any information as to where the articles were, or what the purse contained.

Appellant complained in Bill of Exception No. 4 that the testimony of Mr. Howerton was inadmissible because appellant was not warned, was under arrest and "the statute with refer-

ence to the taking of confessions and the admissibility of statements taken while under arrest had not been complied with."

Bill of Exception No. 4 is qualified, the testimony of Mr. Howerton on cross-examination being shown wherein he testified "I found out as a result of going down there at 2 o'clock in the morning—where these (referring to State's Exhibits 3 and 5) were and that he was involved in this crime according to his own admission."

We pass on to Bill No. 9 which complains of the argument of Assistant District Attorney Tolbert, wherein he stated:

"Al Clyde finished a four year term up here as District Attorney. I am finishing one as Assistant and if Al Clyde will tell you for one minute that A. C. Howerton's word should not be taken at 100% I will jump out of that window and spin around on my left ear. A. C. Howerton said he got up at 2:00 in the morning and went down there; and you know, Al, it matters not what time of night that duty calls A. C. Howerton he is going to answer the call, and you know, furthermore, that when A. C. Howerton goes out on an investigation and comes down here and tells the jury, he is going to tell them the plain God Almighty unvarnished truth and nothing more. I charge you to deny that."

Appellant's objection to the argument as being out of the record and constituting unsworn testimony of the assistant district attorney was promptly sustained and the jury was instructed not to consider same. Appellant contends that reversible error is shown by this bill considered in the light of the testimony reflected in Bill No. 4.

We find no reversible error in either of these bills. The testimony of Officer Howerton was admissible, the facts stated as to the stolen property being thereafter found to be true. Benavidez v. State, 143 Tex. Cr. Rep. 481, 154 S.W. 2d 260; Vaughn v. State, 143 Tex. Cr. Rep. 150, 157 S.W. 2d 894; Alexander v. State, 151 Tex. Cr. Rep. 235, 207 S.W. 2d 881.

The suggestion or inference in the argument was as to the truthfulness and trustworthiness of Officer Howerton who gave this testimony.

Other property belonging to the prosecutrix had been found

in appellant's possession, and we observe nothing which would tend to question the accuracy of Howerton's testimony, an important part of which was elicited by appellant's counsel.

The argument complained of is not of such a nature as to arouse the passion or prejudice of the jurors, and is not so obviously harmful or prejudicial that the court's instruction to the jury to disregard the argument did not cure the errors.

The evidence sustains the conviction and we find no reversible error.

The judgment is affirmed.